## OVERSEERS OF GILPIN TP. v. OVERSEERS OF PARKS TP.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF ARMSTRONG COUNTY.

Argued October 11, 1887—Decided January 3, 1888.

An order of removal of an alleged poor person who has never been a burden to the township by relief obtained, made upon the information of the overseers that he is likely to become chargeable, but without an adjudication by the justices of the necessary facts with notice to the person affected, is void.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 66 October Term 1887, Sup. Ct.; court below, No. 11 March Term 1887, Q. S.

On December 27, 1884, the overseers of the poor of Parks township made information before two justices of the peace that Alexander Williams with his family had lately come to

reside in said township without having gained a legal settlement therein, was likely to become a charge on said township and that his last legal residence was in Gilpin township, asking for an order of removal. The order of removal was granted without any notice or hearing. Upon this order, Williams, his wife and some of his children, were taken into Gilpin township and a copy of the order given to one of the overseers of that township, who refused to receive the family as well as the order of removal. On January 6, 1885, the overseers of the poor of Gilpin township appealed from the said order of removal to the Court of Quarter Sessions, and on March 2, 1885, a rule was granted upon the overseers of Parks township to show cause why said order of removal should not be quashed.

From the testimony before the court at the argument it appeared that Alexander Williams, a colored man about fifty years of age, had acquired a legal settlement in Gilpin township, but removed therefrom to Parks township where he was living with his wife and a number of children at the time the information referred to was made. He was rather infirm. Some of the members of his family were self-sustaining, worked out, and assisted in the support of the family. At times the family was well supplied with provisions; at other times the want was such that voluntary assistance was rendered by neighbors, in the way of provisions, clothes, etc. It was shown that Williams earned money and was of ability to earn money.

On February 7, 1887, the court, NEALE, P. J., filed an opinion which after referring to the facts stated ruled:

The 16th section of the act of June 13, 1836, P. L. 544, not only provides for the removal of actual paupers, but of persons likely to become paupers. . . . It is very easy to see how this duty may be exceeded, and the rights of citizens in their privilege of selecting homes may be violated, so that when the over-zealous overseer acts without sufficient cause, he himself may become liable. But in the present case, after reviewing the testimony, the conclusion cannot be avoided that Williams was likely to become a pauper, and if that were so, then the duty was cast upon the overseers to see that he and his family should not become a charge upon Parks township. Pursuant

to this apprehension or belief, they made the information and obtained the order of removal. It was then the duty of the overseers of Gilpin township, in any event to have received the persons named in the order of removal. Their failure to do so was a plain violation of their duty. The right of appeal remained to Gilpin township, and if the fact could be established that Gilpin township was not the last place of legal settlement of the said Williams, the reversal of the order would follow. If they knew the fact to be that Gilpin township was the place of last legal settlement, then they could have made such recognition of their liability by giving bond to Parks township, to indemnify in case of the party becoming an actual pauper; or by receiving and providing for him.

In view of all the testimony, unless we can say that said Williams was *not* likely to become a pauper, we cannot reverse the order of removal. We think the facts sufficiently sustain the information that Alexander Williams was likely to become a charge, and therefore the order of removal is sustained, the motion to quash refused, and it is further found and decreed that the township of Gilpin was and is the last place of legal settlement of the said Alexander Williams and family. The appeal is therefore dismissed, and it is ordered and directed that the overseers of the poor of Gilpin township pay the costs of the proceeding, and of this appeal.

A bill of exceptions having been duly sealed to the opinion and order of the court and the answers to points submitted, the overseers of Gilpin township then took this writ, assigning said opinion and order as error.

*Mr. David Barclay* (with him *Mr. S. M. Crosby*), for the plaintiff in error:

1. The statute confers upon the overseers of the poor no power over the person of one in indigent circumstances, whether with a settlement or not, until such person shall apply to them for relief: §§ 1, 5, act June 13, 1836, P. L. 541. Then the person "is likely to become chargeable." Overseers, in respect of making a township chargeable for relief, are but ministerial officers exercising an authority conferred by the order of two magistrates, and are not entrusted with discretionary powers: Overseers v. Overseers, 2 W. 280.

Opinion of the Court.

2. The information alleged that Williams was "likely to become a charge" to the township, not "chargeable." The averment was not within the statute: Sylvanus v. Johnston, 2 Salk. 485. The record of the justices showed that there was no evidence and no adjudication of the status of the alleged poor person, nor of the fact of his settlement. The order of removal should have been quashed.

*Mr. J. H. McCain* (with him *Mr. M. F. Leason*), for the defendants in error:

1. Section 1, act of March 16, 1868, P. L. 46, provides a writ of error to the order of the Quarter Sessions on the hearing of an appeal from an order of removal. By the certiorari taken in this case jurisdiction is not conferred upon this court: Lower Augusta v. Selinsgrove, 64 Pa. 166; Moreland Tp. v. Davidson Tp., 71 Pa. 377; Parker Tp. v. East Franklin Tp., 13 W. N. 141.

2. The words "likely" and "chargeable" are to be construed in their general and popular sense: 1 Bl. Com. 58. And it is immaterial whether the adjudication by the justices was sufficient or not. On the hearing of appeals from orders of removal, defects of form or of substance are to be amended or disregarded: § 19, act June 13, 1836, P. L. 544; Limestone Tp. v. Chillisquaque Tp. 87 Pa. 294: Reading v. Cumree, 5 Binn. 81; Cumberland Tp. v. Jefferson Tp., 25 Pa. 463; Chillisquaque Tp., 2 Penny. 487.

OPINION, MR. JUSTICE WILLIAMS:

The facts important to a correct understanding of the question in this case are few and free from controversy.

One Alexander Williams, a colored laborer, with his wife and seven children, lived in Parks township, Armstrong county, in December, 1884, and for nearly two years prior thereto. He had supported his family by his own labor and that of his older children, supplemented at times by the gifts of kind-hearted neighbors. He had not applied to the overseers for aid nor had any one made application on his behalf. The overseers of the poor, however, fearing that he might become chargeable to the district which they represented, at sometime, and not willing that his residence in their district should ripen

into a settlement under the poor laws, went before two justices of the peace and made an affidavit that Williams and his family were likely to become chargeable to the township of Parks, and that his last settlement was in Gilpin township. The justices thereupon, as the docket entries show, without notice to Williams, without the testimony of a witness, and without any form of adjudication, issued an order authorizing and requiring the overseers to remove Williams and his family to Gilpin township. Armed with this order the overseers came to the cabin of the colored man while he and his family were at their breakfast, loaded the father, mother and four children into a wagon and proceeded to " remove " them from Parks township.

The colored man tells the story of their removal with simplicity and pathos thus: " I told him (the overseer) he needn't bother about me, I had plenty to eat. He said he was going to take me if I did have plenty to eat. Me and my family got into the wagon. It reminded me of old times. . . . I told him I was not going. He said I should go, if I did not they would make me; that if I rebelled they would take me by force. He never said why I would have to go."

The overseers of Gilpin, to whom Williams and his family were taken, appealed from the order of removal, and on the trial asked the Court of Quarter Sessions to hold " that it does not anywhere appear in this case that in granting the order there was an adjudication by the justices." This the court declined. The appellant also asked the court to quash the order of removal, which was declined. This ruling of the court was erroneous.

When the overseers of Parks township made their complaint against Williams, alleging his liability to become chargeable, it was the duty of the justices to direct notice to him of the complaint, and upon such notice to inquire into and adjudicate upon the truth of the complaint. If Williams had been a pauper he would not have been entitled to notice of the proceedings for his removal. The contest in that case would have been between the poor districts, in order to determine which of them should be held for the support of one who was a public burden. In that contest he could have no interest. Here, however, the proceeding was against one who was not a public

burden. The complaint against him was that he was likely to become chargeable. He was the party against whom the proceeding was in the first instance directed, and it was his privilege to show that the complaint was unfounded. If unable to satisfy the justices that he was not likely to become chargeable, he had the right to give suitable security to indemnify the township against liability for his support. If he could do neither of these things, and the evidence justified such action, the justices could properly adjudge that the complaint was sustained and that Williams should be removed to his last legal settlement. Such an adjudication would support an order removing the person affected thereby from his actual residence to his legal settlement, and for the manner of its execution the "poor person" would be dependent upon the humanity of the officers whose duty it might be to remove him.

It follows from what has now been said that the order of removal made in this case without notice to the person to be affected by it and without an adjudication upon the complaint was not merely irregular but void. Its execution in the manner described by the witnesses was a violation of the Bill of Rights. It is a familiar and a favorite maxim of the law that a man's house is his castle. It is applicable to the cabin of the colored man as truly as to the mansion of the rich. Until his liability to become chargeable was established in accordance with the forms of law, Williams could not be removed from his home without his consent.

> The judgment of the Court of Quarter Sessions of Armstrong county is now reversed, and the order of removal quashed.