ELIZABETH LOVELL *vs.* FRED. SEEBACK, impleaded, etc.

March 2, 1891.

**Constitution — Removal of Paupers to County of Settlement.—**The statute authorizing the chairman of the board of county commissioners to order the removal to the county of their legal settlement of poor persons who have applied for public support in another county, and are likely to become chargeable thereon for support, and who after warning to depart therefrom are unable or have refused to do so, *held* to be constitutional, and to justify removals where the facts are such as are specified in the statute.

**Same—Effect of Decision of County Officer.—**It is not decided whether such officers have authority to determine such matters of fact so as to conclude the poor person in respect thereto.

Action brought in the district court for Ramsey county, to recover $10,000 damages for the kidnapping of the plaintiff and abducting her from Goodhue to Steele county. The action was removed for trial to Goodhue county, and the defendants (county officers of that county) answered, alleging the matters stated in the opinion. A demurrer to the answer of defendant Seeback was overruled by *Mc-Cluer,* J., and the plaintiff appealed.

*P. W. Locke* and *H. J. Loud,* for appellant.

*F. M. Wilson,* for respondent.

v.45M.—30

DICKINSON, J.   Appeal by the plaintiff from an order overruling a demurrer to the answer of the defendant Seeback.   The complaint set forth as a cause of action, among other things, that while the plaintiff was a resident of the county of Goodhue, she was, by the command and warrant of the defendant Seeback and others, forcibly arrested and taken to the county of Steele.   The answer, the sufficiency of which is brought in question by the demurrer, sets forth at length that the respondent was a member and the chairman of the board of county commissioners of Goodhue county; that the plaintiff resided and was legally settled in the county of Steele, but that, being temporarily in the county of Goodhue in the summer of 1888, she applied to one of the board of commissioners of the latter county for public support and relief; that this application having been reported to the respondent, as chairman of the board, he officially warned the plaintiff, pursuant to Gen. St. 1878, c. 15, § 14, to depart from that county to the place of her legal settlement, the county of Steele, which she refused and neglected to do; that thereupon in January, 1889, the plaintiff being in destitute circumstances, and likely to become chargeable upon the county of Goodhue for support, the respondent, as chairman of the board of county commissioners, following the terms of the statute, executed an order of removal, and delivered it to a constable, who in compliance therewith took the plaintiff into custody, and removed her to the county of Steele.   The principal question arising upon the demurrer is as to whether this statute is invalid, on constitutional grounds, so that the authority in terms conferred by it is unavailing to justify the order of removal, under the facts set forth in the answer and admitted by the demurrer. The statute is as follows:   "Whenever application for public support or relief is made to any county commissioner by any person who has not a legal settlement in the county in which such application is made, but who has a legal settlement in some other county in this state at the time of making such application, the board or chairman thereof shall warn such person to depart from said county; and if such person is unable or refuses so to depart within a reasonable time after being so warned, and he is likely to become chargeable upon the public for support, the chairman of the board of county commis-

sioners may issue an order, under his hand and the seal of said board, directed to the sheriff or any constable of the same county, and requiring him to take such person, and convey him to the county in which he has a legal settlement; and the sheriff or constable to whom the same is delivered shall take such person and convey him to the county designated in said order." It is to be taken as admitted that the facts were such as the statute contemplates as justifying an order of removal; and the question is whether it is within the power of the legislature to enact a law to the effect that when a poor person, having a legal settlement in some county in this state, but temporarily being in another county, applies for public support therein, and, being in destitute circumstances, is likely to become chargeable for public support in that county, the county commissioners of that county, or their chairman, may lawfully cause such person, after he shall have refused to depart, to be removed to the county of his legal settlement, without judicial proceedings, without notice to such person of the contemplated removal, and without opportunity to be heard in respect thereto. Would this be an interference with the right of personal liberty "without due process of law?"

We shall confine our decision strictly to the case here presented, which, as it will be observed, does not involve an inquiry as to the power of the county commissioners, by their *ex parte* proceedings, to conclude the person removed in regard to any fact upon which the order of removal may be based. We do not decide whether under this statute the county commissioners have any power to finally determine any such questions. Though it be conceded that they have not, it would not follow that the statute may not be sustained in its application to a case where the facts are shown or admitted to be such as are specified in the law as reasons justifying removal. Many illustrations may be given of cases where the law, either common or statute, justifies an act or course of conduct by a private person or a public officer, under particular circumstances, which would be illegal except under such circumstances. In such cases the person or officer must accept whatever risk there may be of being held responsible if the facts should not prove to be such as to legally justify his conduct.

The abatement of nuisances by a private person, although attended with an interference with or even the destruction of the property of another; the levy of distress for rent at common law and under statutes; the distress of goods for taxes; the taking up and disposing of estrays; the arrest without warrant of one engaged in the commission of a felony; a traveller on a public highway going upon the adjacent land when necessary to avoid an obstruction rendering the highway impassable,—are some of the many instances in which the principle referred to prevails. Whether in such cases the interference with the person or property of another, without any previous adjudication concerning his rights, is justified by the law or not, depends upon the facts, among others, as to whether a nuisance exists; whether rent is due or taxes unpaid; whether animals taken up as estrays are in fact such; whether the person arrested is in fact committing a felony; whether the highway is impassable. Such illustrations, and others which might be mentioned, especially cases involving the exercise of the general police power of the state, show that, both according to the ancient principles of the common law and by statute, a person may, under some circumstances, be lawfully deprived of his property, or temporarily restrained of his liberty, without any previous adjudication concerning his rights. The meaning of the phrase "due process of law" in the constitution is not strictly limited to judicial process or proceedings.

In *Weimer* v. *Bunbury*, 30 Mich. 201, wherein this constitutional provision was under consideration, the court (Cooley, J.) said (p. 213 :) "If there existed, before that instrument [the constitution] was adopted, well-known administrative proceedings, which, having their origin in a legislative conviction of their necessity, had been sanctioned by long and general acceptance, we are no more at liberty to infer an intent in the people to prohibit them by implication from any general language, than we should be to infer an intent to abridge the judicial authority by the use of similar words. * * * Nothing previously in use, regarded as necessary in government and sanctioned by usage, can be looked upon as condemned by it. Administrative process of the customary sort is as much due process of law as judicial process. * * * A day in court is a matter of right

in judicial proceedings, but administrative proceedings rest upon different principles. The party affected by them may always test their validity by a suit instituted for the purpose, and this is supposed to give him ample protection." In *State* v. *Allen*, 2 McCord, 55, the court said: "Any legal process which was originally founded in necessity, has been consecrated by time, and approved and acquiesced in by universal consent, must be an exception to the right of trial by jury, and is embraced in the alternative, the law of the land." The subject was fully discussed, and similar conclusions expressed, in an opinion written by Mr. Justice Curtis in *Murray* v. *Hoboken Land & Improvement Co.*, 18 How. 272.

For the reason expressed in the above authorities it is considered that this statute should not be declared to be unconstitutional. It should not be so declared unless it was clearly beyond the power of the legislature to authorize removals under the conditions specified in this law. Its validity, giving lawful authority to county commissioners to the extent which we have above indicated, may be sustained upon the grounds that such power, resting probably upon grounds of general necessity and expediency, was sanctioned by statute before the adoption of our constitution, has ever since been acquiesced in, and that similar statutes have been in force since the early settlement of this country. It is a measure pertaining to the administration of public affairs, and concerning the reasonable necessity for which a considerable discretion must be allowed to the law-making department of the government, although, of course, subject to such defined constitutional limitations as, under the circumstances, shall be considered as clearly intended to be applicable to such cases. Our law in its present form was enacted in 1864. Prior to 1864, the statute here in force (Rev. St. 1851, *c.* 16, §§ 7, 8; Pub. St. 1858, *c.* 15, §§ 7, 8) was that which prevailed in the territory of Wisconsin at the time of the organization of the state of Wisconsin. While that law differed from our present statute, it in terms authorized the board of county commissioners to remove paupers applying for relief, and does not seem to have contemplated any judicial proceedings as essential to the right to exercise that power. While the statutes in force here since our territorial organization have been subject to the

objections on constitutional grounds which are here urged, we are not aware that hitherto their validity has been questioned. In view of the fact that such laws, which must have been very often put into practical operation, have been in force here, and, as we suppose, unquestioned, for a period of more than 40 years, and long before the adoption of our constitution, it may fairly be said that they have been generally acquiesced in as a valid exercise of legislative power. If we look into the statutes of other states, we shall find that in some a judicial inquiry has been contemplated in such cases, while in others such has not been the case. It is worthy of notice that while in several of the states their statutes from the earliest times have been subject to the constitutional objections here urged, it is doubtful whether a decision is to be found declaring their invalidity. A late case in the supreme court of Pennsylvania (*Gilpin Township* v. *Park Township*, 118 Pa. St. 84, 11 Atl. Rep. 791) may, however, be observed in this connection. In view of the difference in the statutes, and of the facts of the case, we do not deem it an authority on the point. It was not a question of the validity of their statute, but of what the statute required. Of course, it is true that an officer must have authority by statute to justify the making of an order of removal.

Our conclusion is that the statute, at least if it has only the limited scope which we have before referred to, (and it is enough for the purposes of this decision if it has that scope,) is not so clearly beyond the legislative power that it should be declared to be invalid. If it is not invalid by reason of the constitutional provision to which we have referred, none of the constitutional provisions referred to by counsel would render it so. That relating to unreasonable searches and seizures is not applicable to the case.

Order affirmed.